# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **ERNEST N. FINLEY, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| **v.** | ) | |
| | ) | |
| **CITY OF MONTGOMERY and,** | ) | **PLAINTIFF DEMANDS A** |
| **MAYOR STEVEN L. REED,** | ) | **TRIAL BY STRUCK JURY** |
| | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT

---

Plaintiff Ernest N. Finley, Jr. files his Complaint for legal and equitable relief to address unlawful employment practices and violations of Federal and State law by Defendants, City of Montgomery and Mayor Steven L. Reed (collectively referred to as "Defendants").

## JURISDICTION AND VENUE

1.     All the events, transactions, or occurrences which gave rise to Plaintiff's claims took place in this Judicial District. Therefore, venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b)(1).

2.     This action arises under 42 U.S.C. § 1981, *et seq.*; the Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights

Act of 1991; the United States Constitution, Amendment I; the United States Constitution, Amendment XIV; and the laws of the State of Alabama.

3.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1343(4); Title VII, 42 U.S.C. § 2000e-5(f)(3); and Title I of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981, *et seq.*

## PARTIES

4.      Plaintiff Ernest N. Finley, Jr. is a Black male and at all relevant times a resident of Montgomery County, Alabama. Finley was employed for six years with the City of Montgomery Police Department as Chief of Police.

5.      Defendant City of Montgomery is a local agency of the State of Alabama. At all times relevant hereto, the City of Montgomery has engaged in business in Montgomery, Alabama and has been an employer within the meaning of 42 U.S.C. § 2000e(a), Title VII of the 1964 Civil Rights Act and 1991 amendments thereto. At all times relevant to this action, the City of Montgomery has maintained and operated a business in Alabama and has fifteen (15) or more employees and is considered an employer for Title VII purposes and the 1991 amendments thereto.

6.      Defendant Mayor Steven L. Reed is the Mayor of the City of Montgomery. Mayor Reed is an adult individual citizen of the United States and of the State of Alabama. He is a resident of this Judicial District and Division.

7.      Finley seeks all relief to which he is entitled, including reinstatement,

back pay, front pay, compensatory damages, punitive damages, interest, and attorneys' fees and costs incurred in the bringing of this action. Finley requests a jury to hear this matter.

**CONDITIONS PRECEDENT**

8.     On January 31, 2022, Finley filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation. A copy of his Charge is attached as **Exhibit A**.

9.     On December 16, 2022, the EEOC issued a Notice of Right to Sue, which was received on December 28, 2022. (*See* **Exhibit B**.)

10.     On January 28, 2022, Finley filed a Notice of Claim for Damages with the City of Montgomery, pursuant to the provisions of §§ 11-47-23 and 11-47-192 of the Code of Alabama, 1975. (*See* **Exhibit C**).

11.     There are no conditions precedent for Finley to bring this action under 42 U.S.C. § 1981.

**FACTUAL AVERMENTS**

12.     Ernest N. Finley, Jr. ("Finley" or "Plaintiff"), a Black male over the age of 40, was hired by the City of Montgomery in 2015 to serve as the Chief of Police at the Montgomery Police Department.

13.     At the time of his hiring, Finley was a 29-year veteran of the police force, having begun his career with the Atlanta Police Department in 1986, first as a patrol officer, then as Deputy Chief of Field Operations.

14.     Finley served as Chief of Police until he was forced to resign by Mayor Steven L. Reed ("Reed") in June 2021.

15.     Finley was responsible for supervising the entire Montgomery Police Department, which consisted at the time of approximately 200 police officers. Finley reported to Mayor Reed.

16.     On or about April 6, 2021, the Mayor conspired with certain City agents and police officers to file false complaints against Finley that he engaged in bullying, retaliation, race-based decision making, and ethical violations that he used his position as Police Chief for financial gains. These allegations and false claims were part of a conspiracy to force Finley to terminate his position with the City for discipline of Black police officers for violating police policies, for promotion decisions where a White police officer was promoted, and for speaking out on matters of public concern.

17.     Beginning in October 2020, Finley and Deputy Chief of Operations Jennifer Reaves ("Reaves") were tasked with the investigation of approximately 12 police officers for policy violations, ethics violations, fraud and theft involving second jobs the officers were working.

18.     The results of Finley and Reaves' investigation were forwarded to the Investigator for the City.

19.     All 12 officers were found guilty of violations of varying degrees.

20.     Five officers reporting to Reaves were found guilty of ethics violations.

21.     The remaining officers reported to Deputy Chief of Staff Zedrick Dean ("Dean"), a Black male. The remaining officers under Dean were either not guilty of ethics violations or the violations were considered minor.

22.     The five officers reporting to Reaves should have been terminated because of the totality of all the evidence discovered supporting the various ethical and departmental violations. Finley reviewed the findings and recommendations but forwarded the results to the Mayor. The Mayor's office decided the final discipline.

23.     Mayor Reed encouraged the Montgomery Police Department officers to complain about Finley to the City Council.

24.     After completing the investigation of the officers, Finley was targeted by agents and employees of the City for regular and ongoing hostility, harassment, discrimination, and intentional insubordination, including employees and managers of the Montgomery Police Department with whom Finley worked on a daily basis.

25.     Because Chief Finley had promoted Reaves to the position of Deputy Chief of Operations, he was also met with opposition for promoting a White police officer.

26. In the face of the false allegations, the Mayor told Finley he could not defend himself or even speak during meetings. The Mayor told Finley he had to remain silent even during the City Council meetings.

27. The City, its agents, employees, and the Mayor forwarded false and fraudulent complaints against Finley and Reaves to the State of Alabama Ethics Commission ("Ethics Commission" or "Commission").

28. Finley and Reaves were then subjected to a full investigation, wherein selected officers submitted anonymous complaints and statements to the ethics investigator, Byron Butler ("Butler"), a former police officer with the City of Montgomery that had reported to Reaves previously.

29. Butler and the City conspired to manipulate evidence to intentionally find Finley and Reaves guilty of ethics violations.

30. Officers were being recruited to file complaints and give statements and submit false evidence to the Ethics Commission against Finley and Reaves, including, but not limited to, Zedrick Dean, Antavione Ferguson, Marcus Webster, John Mackey, Earl Ware, Jr., and Jeremy Harrison.

31. Officer Tomekia Armstead told Peer Support for the City that she was being recruited to file complaints against Finley and Reaves. Armstead gave Finley permission to send the information to the City Investigator but the City ignored Finley's complaint.

32.     Finley was subsequently told by the Ethics Commission General Counsel Cynthia Raulston ("Raulston") that he would be found guilty of ethic violations and he could accept the administrative resolution or be charged as a felon. Finley was not told of what he had violated. Finley later learned exculpatory evidence had been withheld from him and his lawyers that cleared his name and showed the complaints were falsified.

33.     Fearing he would be charged with a felony, Finley agreed to the administrative resolution after pressure by Raulston.

34.     Once the complaints were filed against Finley and Reaves, the City and the Mayor forced Finley to resign his employment with the City. The Mayor presented Finley with a resignation letter to sign or he would be terminated because of the complaints brought against him.

35.     Finley opposed the forced resignation and did not want to leave his employment as he had done nothing to be removed from his position as Chief of Police. Mayor Reed told Finley he was being removed and it could be easy or difficult, meaning he was either resigning or Reed was terminating him.

36.     Mayor Reed prepared the resignation document for Finley to sign.

37.     The City of Montgomery and the Mayor wanted Finley removed from his position as Chief of Police because they did not approve that Finley enforced Civil Rights laws of the United States and hired, promoted and disciplined

employees equitably, regardless of race or gender. Reed disfavored following anti-discrimination laws and wanted Black officers promoted and provided better terms and conditions because of their race.

38.     On August 4, 2021, based on false and fabricated evidence created by the City, the State found that Finley had committed an unspecified "minor violation" of the Alabama Ethics Act.

39.     The Mayor issued an immediate press release that was circulated to the media including social media to intentionally disparage and defame Finley and his personal and professional reputation.

40.     On September 1, 2021, the City issued a press release entitled, "Interim Montgomery police chief: Department morale is 'coming back around.'" Finley's photograph and name were published, stating he had committed a "minor violation" of the Alabama Ethics Act.

41.     The City's press release intentionally disparaged and defamed Finley personally, professionally, and called into question his ethics so as to shame and embarrass him with the community, his peers, and potential employers.

42.     In November 2021, the Alabama Attorney General's office exonerated and cleared Finley and Reaves of all wrongdoing.

43.     The Attorney General's separate investigation of Reaves and Finley concluded that the Ethics Commission conspired with the City and its agents in

unethical and illegal acts to present false evidence to the Ethics Commission regarding Finley and Reaves. Further investigation revealed exculpatory evidence was withheld in violation of the law, and other evidence was continued and incorrectly reported to the Commission in order for Raulston and Butler to secure votes of the Commission to convict Finley and Reaves of ethical violations.

44.    The City did not issue any type of press or media release that Finley was cleared of a violation of the Alabama Ethics Act; nor did the Ethics Commission acknowledge the findings of the Attorney General's office.

45.    The City and the Mayor's office have remained silent and did not attempt to rectify the professional and reputational harm it caused to Finley. The City did not reinstate Finley to his former position or restore his pay. Rather, the City and the Mayor hired a permanent replacement for Finley and displacing the Interim Police Chief, Ramona Harris ("Harris").

46.    When Harris later decided to retire, the City recognized Harris with a retirement ceremony, thanking her for her years of service to the citizens of Montgomery, attended by the Mayor and other City officials. Finley and Reaves were denied recognition of their years of service and forced out of their positions. The City refused to acknowledge their tenure, positions or service, allowing Finley and Reaves to have their offices packed up in boxes and delivered later to them.

47.    Defendants wrongfully interfered with Plaintiff's civil rights, including his First Amendment and Fourteenth Amendment rights. Defendants' ongoing discrimination, harassment and retaliation of Finley caused him reputational harm and damaged his reputation in the community, the City, the Police Department, and with the State of Alabama. Finley was intentionally targeted by Defendants to force him to resign. Defendants created ethics charges against Finley so as to terminate him with shame, ridicule and embarrassment by tarnishing his name and reputation.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1981 and TITLE VII
### RACE DISCRIMINATION and RETALIATION
### AGAINST ALL DEFENDANTS

48.    Plaintiff adopts and realleges paragraphs 12-47 as if fully recited herein.

49.    The City of Montgomery forced Finley to resign because he disciplined Black police officers and promoted a White police officer.

50.    The City forced Finley to resign because of his race, Black, and in retaliation for his objection to intentional race discrimination by the Mayor and the City.

51.    The City forced Finely to resign in retaliation for enforcing Civil Rights laws of the United States and hiring, promoting and disciplining employees equitably, regardless of race or gender.

52.    Finley's race was a motivating factor that prompted the City of

Montgomery to force his resignation. *See* 42 U.S.C. § 2000e-2(m); *Quigg v. Thomas County School Dist.*, 814 F.3d 1227, 1237-38 (11th Cir. 2016).

53.     Finley was told by the Mayor that he was being removed and it could be easy or difficult. Finley considered the Mayor's comments and actions threatening and had no choice but to sign the resignation prepared by the Mayor.

54.     Finley's resignation began immediately and without notice.

55.     As a proximate result of Defendant's unlawful discrimination and retaliation, Plaintiff suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a)     That he be placed in the position in which he would have worked absent Defendants' retaliatory treatment, or, in the alternative, front pay;

b)     Back pay from the date of his retaliatory removal and for the raises he should have received;

c)     Punitive damages, to deter such conduct in the future;

d)     Injunctive relief;

e)     Interest;

f)     Attorneys' fees;

g)     Costs; and

h)     Such other legal or equitable relief to which Plaintiff may be entitled.

## COUNT II
## 42 U.S.C. § 1981 and TITLE VII
## HOSTILE WORK ENVIRONMENT and RETALIATION
## AGAINST ALL DEFENDANTS

56.    Plaintiff adopts and realleges paragraphs 12-47 as if fully recited herein.

57.    The City of Montgomery, though its agents and employees, harassed Finley because he is a Black male.

58.    The City harassed Finley because he disciplined Black police officers and promoted a White police officer.

59.    The Mayor became hostile and adversarial to Finley in retaliation because Finley would not engage in the Mayor's race-based decision-making.

60.    The City harassed Finley because of his objection to intentional race discrimination proposed and condoned by the Mayor and the City. The City subjected Finley to adverse terms and treatment.

61.    On or about April 6 2021, the City, its agents, employees, and the Mayor caused false complaints to be made against Finley before the Montgomery City Council and subsequently the State of Alabama Ethics Commission.

62.    Finley suffered damages because of the hostile work environment and retaliation.

63.    As a proximate result of Defendant's unlawful harassment and retaliation, Finley suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a) That he be placed in the position in which he would have worked absent Defendants' retaliatory treatment, or, in the alternative, front pay;

b) Back pay from the date of his retaliatory removal and for the raises he should have received;

c) Punitive damages, to deter such conduct in the future;

d) Injunctive relief;

e) Interest;

f) Attorneys' fees;

g) Costs; and

h) Such other legal or equitable relief to which Plaintiff may be entitled.

## COUNT III
## FIRST AMENDMENT RETALIATION
## PURSUANT TO § 1983
## AGAINST ALL DEFENDANTS

64.     Plaintiff adopts and realleges paragraphs 12-47 as if fully recited herein.

65.     In taking the above-described actions, Defendants intentionally and willfully retaliated against Plaintiff for his constitutionally-protected speech under the First Amendment, to include removing him from his position as Chief of Police of the Montgomery Police Department and stripping him of all pay and benefits of his position.

66.     Plaintiff's constitutionally-protected speech regarded matters of public concern, specifically, abuses in the Police and Mayor's Departments, as set out in articles participated in or generated by Plaintiff and numerous statements or

13

presentations before the City, its officers, and community reports.

67.    Said speech played a substantial part in Defendants' decision to discharge Plaintiff as Chief of Police.

68.    As a proximate consequence of Defendants' violation of the First Amendment, Plaintiff has suffered and will continue to suffer damage to his professional life, reputation, and future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

69.    Each Defendant committed acts to further the conspiracy.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a)    That he be placed in the position in which he would have worked absent Defendants' retaliatory treatment, or, in the alternative, front pay;

b)    Back pay from the date of his retaliatory removal and for the raises he should have received;

c)    Punitive damages, to deter such conduct in the future;

d)    Injunctive relief;

e)    Interest;

f)    Attorneys' fees;

g)    Costs; and

h)    Such other legal or equitable relief to which Plaintiff may be entitled.

**COUNT IV**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**SUBSTANTIVE DUE PROCESS RIGHTS UNDER 42 U.S.C. § 1983**
**AGAINST DEFENDANT CITY OF MONTGOMERY**

70.     Plaintiff adopts and realleges paragraphs 12-47 as if fully recited herein.

71.     By and through its conduct, as alleged herein, and acting under color of law, the City of Montgomery is liable for violations of Plaintiff's Fourteenth Amendment substantive due process rights.

72.     On or about April 6, 2021, the Mayor conspired with certain City agents and police officers to bring false complaints against Finley to the City Council.

73.     Mayor Reed told Finley that neither he nor anyone representing him could speak to defend the Police Department, Finley, or Reaves at the same meeting.

74.     The City, its agents, employees, and the Mayor then forwarded the false and fraudulent complaints against Finley and Reaves to the State of Alabama.

75.     Once the complaints were filed against Finley and Reaves, the City forced Finley to resign his employment with the City.

76.     Finely opposed the forced resignation and did not want to leave his employment as he had done nothing to be removed from his position as Chief of Police. Mayor Reed told Finely he was being removed and it could be easy or difficult, meaning he was either resigning or Reed was terminating him.

77.     Mayor Reed prepared the resignation document for Finley to sign.

78.     Mayor Reed and the City made the decision to terminate Plaintiff

15

without review of any of the evidence and based their decision on arbitrary and capricious factors. Mayor Reed and the City terminated Plaintiff in violation of clearly established law regarding municipal employees.

79.     The actions of the Defendant of unlawfully terminating Plaintiff have caused Plaintiff financial loss, severe emotional distress, and a contracted quality of life.

80.     Defendant has a habit and/or practice of allowing and condoning discrimination based on race, age and retaliation.

81.     Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish, and lost wages as a consequence of Defendant's unlawful conduct.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a)     That he be placed in the position in which he would have worked absent Defendants' retaliatory treatment, or, in the alternative, front pay;

b)     Back pay from the date of his retaliatory removal and for the raises he should have received;

c)     Punitive damages, to deter such conduct in the future;

d)     Injunctive relief;

e)     Interest;

f)     Attorneys' fees;

g)     Costs; and

h)     Such other legal or equitable relief to which Plaintiff may be entitled.

## COUNT V
## CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS
## (42 U.S.C. § 1985)
## AGAINST ALL DEFENDANTS

82.     Plaintiff adopts and realleges paragraphs 12-47 as if fully recited herein.

83.     Plaintiff alleges that Defendants conspired to violate his civil rights in violation of 42 U.S.C. § 1985. In taking the above-described actions, Defendants intentionally and willfully conspired against Plaintiff to deprive him of his constitutionally-protected speech under the First Amendment, to include stripping him of his position as Chief of Police.

84.     Plaintiff's constitutionally-protected speech regarded matters of public concern, specifically, abuses in the Police and Mayor's Departments, as set out in articles participated in or generated by Plaintiff and numerous statements or presentations before the City, its officers, and community reports.

85.     Said speech played a substantial part in Defendants' decision to discharge Plaintiff as Chief of Police.

86.     As a proximate consequence of Defendants' violation of the First Amendment, Plaintiff has suffered and will continue to suffer damage to his professional life, reputation, and future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

87.     Each Defendant committed acts to further the conspiracy.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

    a)      That he be placed in the position in which he would have worked absent Defendants' retaliatory treatment, or, in the alternative, front pay;

    b)      Back pay from the date of his retaliatory removal and for the raises he should have received;

    c)      Punitive damages, to deter such conduct in the future;

    d)      Injunctive relief;

    e)      Interest;

    f)      Attorneys' fees;

    g)      Costs; and

    h)      Such other legal or equitable relief to which Plaintiff may be entitled.

## COUNT VI
## CIVIL CONSPIRACY UNDER ALABAMA LAW
## AGAINST ALL DEFENDANTS

88.    Plaintiff adopts and realleges paragraphs 12-47 as if fully recited herein.

89.    A civil conspiracy under Alabama law requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.

90.    Plaintiff's claim of civil conspiracy is brought against the Defendants named in their individual capacities.

91.    Finley was Chief of Police of the Montgomery Police Department. He held a property interest in that position. Defendants conspired to illegally deprive him of that property interest by engaging in the violation of his rights under the First

Amendment to the U.S. Constitution.

92.    Defendants conspired to illegally retaliate against Finley for engaging in federally-protected speech and exercising his federally-protected right to speak out on matters of public concern.

93.    Defendants conspired to deprive Finley of his civil rights.

94.    Defendants conspired to damage Finley's reputation and name by removing him from his visible and prestigious position as Chief of Police, which diminished his standing and reputation in the community, and by limiting his income to inadequate or nonexistent amounts.

95.    Defendants conspired among themselves and each Defendant committed acts to further the conspiracy.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a)    That he be placed in the position in which he would have worked absent Defendants' retaliatory treatment, or, in the alternative, front pay;

b)    Back pay from the date of his retaliatory removal and for the raises he should have received;

c)    Punitive damages, to deter such conduct in the future;

d)    Injunctive relief;

e)    Interest;

f)    Attorneys' fees;

g)    Costs; and

h)    Such other legal or equitable relief to which Plaintiff may be entitled.

## COUNT VII
## DEFAMATION – INTENTIONAL SLANDER AND LIBEL PER SE AGAINST ALL DEFENDANTS

96.    Plaintiff adopts and realleges paragraphs 12-47 as if fully recited herein.

97.    On or about August 4, 2021, the City said or caused to be published the following false statement about Finley: **"The Alabama Ethics Commission found Montgomery Police Department Chief of Operations Jennifer Reaves and former Police Chief Ernest Finley each committed a minor violation of the Alabama Ethics Act."**

98.    On or about September 2, 2021, the City said or caused to be published the following false statement about Finley: **" Also, shortly after she assumed the role, the Alabama Ethics Commission found that Finley and Montgomery Police Department Chief of Operations Jennifer Reaves each committed a minor violation of the Alabama Ethics Act."**

99.    These statements are defamatory *per se.*

100.    The City published or caused the statements to be published on WFSA 12 News and wfsa.com.

101.    The defamatory statements to WFSA communicated to Montgomery community that Finley had committed an ethics violation.

102.    The City knew or should have known that the statements it made to WFSA were false.

20

103.   WFSA published these false and defamatory statements to WFSA with malice or intent to harm Finley, his professional reputation, and his reputation within the community.

104.   Alternatively, the false and defamatory statement to WFSA was made with reckless disregard of the consequences of the City's false and defamatory statement.

105.   As a direct and proximate result of the City's intentional and malicious publication of false and defamatory statements, Finley has been and will continue to be damaged and injured in his character and reputation.

106.   As a direct and proximate result of the City's intentional and malicious publication of false and defamatory statements, Finley has been and will continue to be damaged in his profession and his business.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a)   That he be placed in the position in which he would have worked absent Defendants' retaliatory treatment, or, in the alternative, front pay;

b)   Back pay from the date of his retaliatory removal and for the raises he should have received;

c)   Punitive damages, to deter such conduct in the future;

d)   Injunctive relief;

e)   Interest;

f)   Attorneys' fees;

g)   Costs; and

h)   Such other legal or equitable relief to which Plaintiff may be entitled.

## COUNT VIII
## DEFAMATION – NEGLIGENT LIBEL AND SLANDER
## AGAINST ALL DEFENDANTS

107.   Plaintiff adopts and realleges paragraphs 12-47 as if fully recited herein.

108.   On or about August 4, 2021, the City said or caused to be published the following false statement about Finley: **"The Alabama Ethics Commission found Montgomery Police Department Chief of Operations Jennifer Reaves and former Police Chief Ernest Finley each committed a minor violation of the Alabama Ethics Act."**

109.   On or about September 2, 2021, the City said or caused to be published the following false statement about Finley: **"Also, shortly after she assumed the role, the Alabama Ethics Commission found that Finley and Montgomery Police Department Chief of Operations Jennifer Reaves each committed a minor violation of the Alabama Ethics Act."**

110.   These statements are defamatory *per se.*

111.   The City published or caused the statements to be published on WFSA 12 News and wfsa.com.

112.   The defamatory statements to WFSA communicated to Montgomery community that Finley had committed an ethics violation.

113.   The City knew or should have known that the statements it made to WFSA were false.

22

114.   Upon information and belief, the City communicated directly with WSFA about Finley.

115.   Upon information and belief, in its direct communications with WFSA, the City made defamatory statements to WFSA to the effect that Finley had committed an ethics violation.

116.   As a direct and proximate result of Defendant's false and defamatory statements to WFSA, Finley has been and will continue to be damaged and injured in his character and reputation.

117.   As a direct and proximate result of Defendant's false and defamatory statements to WFSA, Finley has been and will continue to be damaged in his profession and his business.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a)   That he be placed in the position in which he would have worked absent Defendants' retaliatory treatment, or, in the alternative, front pay;

b)   Back pay from the date of his retaliatory removal and for the raises he should have received;

c)   Punitive damages, to deter such conduct in the future;

d)   Injunctive relief;

e)   Interest;

f)   Attorneys' fees;

g)   Costs; and

h)   Such other legal or equitable relief to which Plaintiff may be entitled.

WHEREFORE, Plaintiff respectfully requests this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging further in discriminatory treatment on the basis of race and age, and retaliation based on protected activity;

B.      Order Defendant to institute and carry out policies, practices, and programs that provide equal provisions and employment opportunities for all employees, and which eradicate the efforts of past and present unlawful employment practices, including implementing a policy against race and age discrimination and against retaliation for engaging in protected activities;

C.      Order retraining of the City and the Police Department on EEO policies;

D.      Order Defendant to make Plaintiff whole by providing back pay, front pay, reinstatement, interest, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, compensatory, punitive, and liquidated damages;

E.      Award Plaintiff reinstatement to his former position with back pay, raises and bonuses, compensatory, punitive and liquidated damages;

F.      Award Plaintiff monetary damages for his discharge;

G.      Award Plaintiff costs and expenses herein, including reasonable attorneys' fees; and

H.    Award such other and further relief this Court deems necessary and proper.

## PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.

Respectfully submitted,

Alicia K. Haynes (ASB-8327-E23A)
An Attorney for Plaintiff

OF COUNSEL:
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226
Phone: (205) 879-0377
Facsimile: (205) 879-3572
Email: akhaynes@haynes-haynes.com

Heather Newsom Leonard (ASB-1152-061H)
**HEATHER LEONARD, P.C.**
P.O. Box 43768
Birmingham, AL 35243
Phone: (205) 977-5421
Facsimile: (205) 278-1400
Email: heather@heatherleonardpc.com

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL**

City of Montgomery
103 North Perry Street
Montgomery, AL 36104

Mayor Steven L. Reed
103 North Perry Street
Montgomery, AL 36104

**PLAINTIFF'S ADDRESS**

Ernest Finley, Jr.
c/o Alicia K. Haynes
HAYNES & HAYNES, P.C.
1600 Woodmere Drive
Birmingham, AL 35226