## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **ERNEST N. FINLEY, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| **v.** | ) | **2:23-cv-00146-KKD-PBH** |
| | ) | |
| **CITY OF MONTGOMERY and,** | ) | **PLAINTIFF DEMANDS A** |
| **STEVEN L. REED, individually and** | ) | **TRIAL BY STRUCK JURY** |
| **in his official capacity as Mayor of** | ) | |
| **the City of Montgomery,** | ) | |
| **Defendants.** | ) | |

---

## FIRST AMENDED COMPLAINT

---

Plaintiff Ernest N. Finley, Jr. files this Complaint for legal and equitable relief to address violations of Federal and State law by Defendants, City of Montgomery and Mayor Steven L. Reed (collectively referred to as "Defendants" unless otherwise denoted).

## JURISDICTION AND VENUE

1.    All the events, transactions, or occurrences which give rise to Plaintiff's claims took place in Montgomery, Alabama. Venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b)(1); 28 U.S.C. § 81(b)(1).

2.      This action arises under 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 1985; the Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended; the United States Constitution, Amendment I; the United States Constitution, Amendment XIV; and the laws of the State of Alabama.

3.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1343(4); and Title VII, 42 U.S.C. § 2000e-5(f)(3).


**PARTIES**

4.      Plaintiff Ernest N. Finley, Jr. is a Black male and at all relevant times a resident of Montgomery County, Alabama. Finley was employed for six years with the City of Montgomery Police Department as Chief of Police.

5.      Defendant City of Montgomery is a local agency of the State of Alabama. At all times relevant hereto, the City of Montgomery has engaged in a business affecting interstate commerce, had fifteen (15) or more employees, and is an employer within the meaning of 42 U.S.C. § 2000e(a).

6.      Defendant Steven L. Reed is the Mayor of the City of Montgomery. Mayor Reed is an adult individual citizen of the United States and of the State of Alabama. He is a resident of this Judicial District and Division.  He is sued both individually and in his official capacity as Mayor of the City of Montgomery.

## CONDITIONS PRECEDENT

7.     On January 31, 2022, Finley filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination and retaliation. A copy of his Charge is attached as **Exhibit A**.

8.     On December 16, 2022, the EEOC issued a Notice of Right to Sue, which was received by Finley on December 28, 2022. (*See* **Exhibit B**.)

9.     On March 16, 2023, within ninety (90) days of his receipt of the Notice of Right to Sue, Finley filed his Complaint.  (Doc. 1.)

10.     Plaintiff has met all conditions precedent to bringing the Title VII claims.

11.     On January 28, 2022, Finley filed a Notice of Claim for Damages with the City of Montgomery, pursuant to the provisions of §§ 11-47-23 and 11-47-192 of the Code of Alabama, 1975. (*See* **Exhibit C**).

12.     There are no further conditions precedent to the claims set forth in the Amended Complaint.

## FACTUAL AVERMENTS

### Plaintiff's Service To The Montgomery Police Department.

13.    Plaintiff Ernest N. Finley, Jr. ("Finley" or "Plaintiff"), a Black male over the age of 40, was hired by the City of Montgomery in 2015 to serve as the Chief of Police at the Montgomery Police Department.

14.    When he was hired, Finley had a 29-year career in police work, having begun his career with the Atlanta Police Department in 1986, first as a patrol officer, then as Deputy Chief of Field Operations.

15.    Finley served as Chief of Police until June 2021.

16.    Defendant Reed forced Findley to resign under threat of termination.

17.    As Chief, Finley was responsible for supervising the entire Montgomery Police Department, which consisted at the time of approximately 200 police officers. Finley reported to Mayor Reed.

18.    Jennifer M. Reaves ("Reaves") is a White female.  She was employed with the Montgomery Police Department for twenty-six (26) years and was promoted to the position of Deputy Chief of Operations in July 2020.

19.    Plaintiff Finley promoted Reaves to the position of Deputy Chief of Operations.

### The Investigation Of Police Officers By Finley And Reaves.

20.    Beginning in October 2020, Finley and Reaves made aware of

4

violations of Department policies by certain police officers involving off-duty employment.

21.     In the line and scope of their official duties and responsibilities, Finley and Reaves requested an investigation from City Investigations.

22.     As a result of investigations by the City, 12 police officers were identified as having committed policy violations involving fraud and theft and 5 police officers were identified as having committed ethical violations.

23.     The results of the investigations by the Investigator for the City of Montgomery were forwarded to Finley and the Mayor's office.

24.     Five officers reporting to Reaves were found guilty of ethics violations. All 5 officers were African-American.  The remaining officers were found guilty of minor violations and these officers reported to Reaves and Deputy Chief of Staff Zedrick Dean, a Black male.

25.     Reaves believed that the 5 officers who reported to her and were guilty of ethics violations should be disciplined by the Department and the matters forwarded to the Ethics Commission.  Reaves discussed this with Finley and the two options were termination or suspension.

26.     A meeting was held with Finley, the Mayor, Bill Barouse from City Investigations, City Attorney Stacy Bellinger, and Judge Charles Price. The recommendation at the meeting was termination.

27.    After the meeting, Jamilla Philpaw, Chief Administrative Officer to the Mayor, called Finley at his office and told him the Mayor did not want the recommendation to be termination. She stated that "A little birdie is telling you this: This is the recommendation: the Mayor wants Option 2, not 1. He does not want to terminate so go with the lesser discipline of suspension."

28.    Finley went back to the police department and told Reaves to process the paperwork for the officers' termination.

29.    Finley forwarded the matter to Defendant Reed for a final decision and approval.

30.    Reed, acting as Mayor, approved the departmental punishment.  The officers were issued a lesser level of discipline than termination of suspension for 20 days, demotion in rank, and 1 year's suspension of off-duty employment. One officer, Ferguson, had been terminated for a chokehold incident, so because he was gone, the discipline was not issued.

31.    Ferguson's previous punishment was a 20-day suspension but this was changed by the Mayor to immediate termination. An appeal by Ferguson followed.

**Racial Resentment Against Finley.**

32.    Following the investigations and discipline, Finley revised the off-duty employment policy for police officers.

33.    Following these investigations and the disciplining of officers, a

6

number of officers within the Montgomery Police Department, with whom Finley and Reaves worked on a daily basis, began a regimen of regular harassment, retaliation, and insubordination toward Plaintiff.

34.    The harassment, retaliation, and insubordination were orchestrated and encouraged by Reed.

35.    Reed, a Black male, believed that Finley, as another Black male, should not have investigated or disciplined the Black police officers.

36.    Reed was also displeased with Finley because he had promoted Reaves, a White police officer, rather than another Black officer preferred by Reed.

37.    Reed, acting as Mayor of the City of Montgomery and working through certain police officers who agreed with him, opposed Finley's and Reaves' efforts to enforce the disciplinary policies against the Black officers.

38.    Reed plotted with others in the Montgomery Police Department to undermine the authority and credibility of Finley and Reaves and to portray them in a negative and false light as negligent in carrying out their sworn duties with the Montgomery Police Department.

39.    On or before April 6, 2021, Reed began conspiring with certain City agents and police officers to solicit false complaints about Finley and Reaves with the Montgomery City Council, City Investigations, and the Alabama Ethics Commission.

40.    Finley learned in April and May of 2021 that certain Black pastors from churches in Montgomery were engaging Reed with complaints about Finley. Pastor Ed Nettles was the ringleader of these meetings. Finley had issued discipline to Nettles' son, a Black police officer. Finley saw Nettles in the Mayor's office on numerous occasions.

41.    Paul Gourdine, Finley's pastor, told Finley about these meetings with Reed and that it did not look good for Finley. He told Finley the Black pastors were after him and were trying to get rid of him.

42.    The Black pastors complained to Reed that Finley was too harsh in his treatment of Black officers and was not promoting Blacks. The Black pastors told Reed they were responsible for electing him Mayor by encouraging their congregations to vote for him, and that they wanted him to take action against Finley because he was not favoring Blacks in his management of the police department.

43.    Reed lodged false complaints about Finley and Reaves with the Montgomery City Council on or about April 6, 2021.

44.    These false complaints included allegations that Finley violated policies; engaged in bullying, retaliation, and race-based decision-making; and that he used his position as Police Chief for personal financial gain.

45.    The allegations included alleged violations of a policy that Reed and the officers knew was no longer in effect and had been replaced by a new policy.

46.     These allegations and false claims were part of a scheme, directed by Reed, to force Finley to resign his position with the City.

47.     Reed, acting on behalf of himself and the City of Montgomery, took these actions, in substantial part, because he believed Finley, as a Black male, had unfairly disciplined other Black police officers, had promoted a White police officer rather than a Black officer, and was speaking out on matters of public concern.

48.     Defendants intended these allegations and false claims to force Finley to resign his position with the City.

### Proceedings Before The Montgomery City Council.

49.     The complaints lodged against Finley became the subject of a meeting of the Montgomery City Council.

50.     Reed instructed Finley that he would not be allowed to have anyone representing him speak in his defense at the meeting or to respond to the allegations made against him.

51.     Reed prohibited Finley from speaking and insisted that he sit in silence during the Montgomery City Council meeting.

52.     Reed encouraged police officers to speak against Finley during this public meeting.

53.    The meeting was attended by several Black pastors, including Ed Nettles. Nettles spoke at the Council meeting and stated he had been counseling several of the Black officers who sought his help because of issues with Finley.

54.    Byron Butler is a paster of a congregation and was present in meetings with the Mayor. Butler was present at the City Counsel Meeting and the Montgomery Personnel Board when the Black officers appealed the discipline by the police department.

### Proceedings Before The Ethics Commission.

55.    The City, its agents, employees, and Reed then forwarded the false and fraudulent complaints that had been lodged against Finley State of Alabama Ethics Commission. Defendants specifically forwarded these complaints to Senior Special Agent Byron Butler for handling and investigation.

56.    At this time the Ethics Commission was comprised of Beverlye Brady, Chair; John Plunk, Vice Chair; Lyn Stuart; Stanton H. McDonald; and Brig. Gen. R. Edward F. Crowell.  Thomas B. Albritton was the Executive Director of the ethics Commission.

57.    The Ethics Commission is authorized by statute to receive complaints and conduct investigations into violations of the Alabama Ethics Act and Fair Campaign Practices Act.  The Ethics Commission is also authorized to issue advisory opinions that offer protection to the person "at whose request the opinion

was issued," as well as to "prescribe, publish, and enforce rules" in accordance with the Alabama Administrative Procedures Act to carry out its duties under the Ethics Act. Ala. Code (1975) §§ 36-25-4(a)(9), (11).

58.    A respondent to an ethics complaint is given notice of the charges filed against them and an opportunity to appear before the Ethics Commission at a hearing where "the laws of due process shall apply." *Id.* At § 36-25-4(d).

59.    Finley was then subjected to a full investigation, wherein selected officers submitted anonymous complaints and statements to the ethics investigator, Byron Butler, a former police officer with the City of Montgomery.

60.    Butler had reported directly to Reaves while he was employed by as a police officer. Butler had remained personal friends with several police officer, including those previously disciplined by Finley and Reaves for theft and fraud.

61.    There had been prior complaints to the Ethics Commission about Butler misusing his position as an investigator.

62.    Butler enlisted Cynthia Raulston, General Counsel of the Ethics Commission, to join in his investigation of Finley.

63.    Reed, acting individually and on behalf of the City of Montgomery, intentionally conspired with Butler and Raulston to manipulate evidence so as to find Finley guilty of ethics violations.

64.    Reed and the City of Montgomery conspired with Butler and Raulston to unjustly investigate Finley because of his race and with the intent to damage him personally and professionally.

65.    Reed, Butler and Raulston recruited officers, including, but not limited to, Zedrick Dean, Antavione Ferguson, Marcus Webster, John Mackey, Earl Ware, Jr., and Jeremy Harrison, to file complaints, give statements and submit false evidence against Finley to the Ethics Commission.

66.    Officer Tomekia Armstead told Peer Support for the City that she was being recruited to file complaints against Finley and Reaves. Armstead gave Finley permission to send this information to the City Investigator but the City ignored Finley's complaint.

67.    In May, 2021, Butler advised Finley that he was investigating him. Butler informed Finley that he was accused of allowing police officers an extra practice round at the shooting ranges which officers were attempting to qualify.

68.    Butler and Raulston claimed that, in October 2020, Finley had violated police department policy 2.311 by giving Reaves additional opportunities to pass her handgun qualification.

69.    Reed, Butler and Raulston knew that the policy which Finley alleged violated had been rescinded in June 2018. They were also aware that the current

12

policy, 3.2.4 (effective April 21, 2021), specifically noted that the prior policy had been rescinded.

70.    The ethics complaints on the individual 5 police officers for theft and fraud were dismissed. Butler conducted no investigation of the officers for alleged ethical violations.

71.    In June 2021, three weeks after Butler notified Finley in writing that he was investigating him for ethical violations on the shooting range, Reed confronted Finley about the allegations.  Reed knew that the policy upon which Butler and Raulston were relying for their investigation of Finley had been rescinded prior to the alleged ethical violation.

72.    Reed told Finley that, if he did not resign, Reed would take other action to end Finley's employment as Chief of Police.

73.    At that time, Reed, acting individually and as Mayor of the City of Montgomery, drafted a resignation letter and presented it to Finley to sign.

74.    Reed knew that the complaints lodged against Finley were false and contrived.

75.    Finley had not engaged in any conduct that would justify his removal as Chief of Police.

76.    Reed and the City of Montgomery were motivated to remove Finley from his position as Chief of Police because Finley complied with the Civil Rights

laws of the United States and hired, promoted and disciplined employees equitably, without regard to race or gender. Reed wanted Finley to utilize race as a factor in his decisions to promote or discipline officers and to provide preferential terms and conditions of employment to Black officers because of their race.

77.     Finley was aware that granting preferential treatment to employees based upon their race or sex, or using race or sex as a factor in making employment decisions, was a violation of the Constitution and laws of the United States.

78.     Finley considered Reed's comments and actions to be threatening. Under undue pressure from Reed, Finley agreed to resign.

79.     On August 4, 2021, Butler and Raulston presented the false evidence to the Ethics Commission. Butler and Raulston intentionally ignored and withheld from the Ethics Commission exculpatory evidence of which they were aware.

80.     On August 4, 2021, the Ethics Commission voted on the claims against Finley. Based upon this vote, the Ethics Commission concluded, without formally finding, that Finley had committed an unspecified "minor violation" of the Alabama Ethics Act.

81.     Without waiting for the Ethics Commission to issue its formal finding, the City and Reed caused a press release to be circulated to the various media outlets reporting the vote and findings of the Ethics Commission. Reed issued this press

release so as to disparage and defame Finley and to damage his personal and professional reputation.

82.    On August 12, 2021, the Ethics Commission issued its formal findings.

83.    On September 1, 2021, the City and Reed issued another a press release entitled, "Interim Montgomery police chief: Department morale is 'coming back around.'" This press release contained Finley's photograph and name and stated that he had committed a "minor violation" of the Alabama Ethics Act.

84.    The City and Reed were aware when they issued this press release that the policy upon which the Ethics Commission had based its decision had been rescinded prior to the conduct engaged in by Finley. The City and Reed were also aware that they were prohibited from knowing anything about the evidence and findings of the Ethics Commission due to statutory grand jury privacy provisions. Nonetheless, the City acquired the grand jury information and published it to others, including the media.

### Finley Is Exonerated By The Attorney General.

85.    The Alabama Attorney General conducted an independent investigation of the circumstances surrounding the investigation of Finley for alleged unethical conduct.

86.    In November 2021, the Alabama Attorney General's office fully exonerated Finley and cleared him of all wrongdoing.

87.     The Attorney General's separate investigation found that false and fabricated evidence against Finley had been presented to the Ethics Commission and that exculpatory evidence had been withheld from Finley.

88.     The City and Reed did not issue any type of press or media release stating that Finley had been cleared of any violations of the Alabama Ethics Act or that the Attorney General had concluded that Finley's legal and Constitutional rights had been violated.

89.     The City and Reed did not retract their initial public statements concerning Finley's conduct, made no attempt to rectify the professional and reputational harm they have caused to Finley, and instead remained silent with complicity.

90.     The City and Reed refused to reinstate Finley to his former position or restore his pay. Rather, they moved to hire a permanent replacement for Finley.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983
### EQUAL PROTECTION CLAUSE VIOLATIONS
### AGAINST REED

91.     Plaintiffs incorporate by reference paragraphs 1-90 of this Complaint as if fully set forth herein.

92.    The Fourteenth Amendment to the United States Constitution prohibits any state from making or enforcing any laws which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

93.    The Fourteenth Amendment to the United States Constitution also protects persons from race discrimination by the government and government officials.

94.    Defendant Reed is a Black male citizen of the United States and Mayor of the City of Montgomery.

95.    Defendant Reed harbored race-based invidious discriminatory animus against Finley because he had investigated and disciplined Black police officers and he acted on that animus due to pressure from Black pastors and constituents that Finley was not favoring Blacks in managing the police department.

96.    Defendant Reed fabricated evidence and brought false complaints against Plaintiff Finley because Reed believed Finley, a Black man, was "disloyal" to the Black police officers he sought to discipline.

97.    Defendant Reed similarly brought and encouraged false complaints against Finley because he believed Finley, a Black man, was "disloyal" to the Black police officers he sought to discipline.

98.    When Plaintiff Finley did not exhibit "racial loyalty" to the City and Reed, Defendant Reed took actions to frustrate Plaintiff Finley's ability to act effectively as Chief of Police and remove him from his position.

99.    The actions of Defendant Reed against Finley were motivated by invidious racial animus.

100.    Defendant Reed used his position as Mayor of the City of Montgomery for an improper purpose to violate the constitutional rights of Finley to the equal protection of the law and due process.

101.    Defendant Reed, acting under the color of state law, deprived Finley of his right to be free from race discrimination as guaranteed by the Equal Protection Clause of the United States Constitution.

102.    This deprivation of Finley's equal protection rights caused him harm and injury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Honorable Court enter a judgment against Defendant Reed in his individual capacities pursuant to 42 U.S.C. § 1983 for:

a.  Compensatory damages to be determined by the trier of fact;
b.  Punitive damages to be determined by the trier of fact;
c.  Injunctive relief, including, but not limited to, reinstating Chief Finley;
d.  Declaratory relief;
e.  That relief which is fair, just, and equitable; and
f.  Costs, including reasonable attorney's fees.

## COUNT II
## FOURTEENTH AMENDMENT - EQUAL PROTECTION CLAUSE
## RACE DISCRIMINATION
## HOSTILE WORK ENVIRONMENT - SUPERVISOR HARASSMENT
## AGAINST DEFENDANT REED

103.   Plaintiff adopts and realleges paragraphs 1-90 as if fully recited herein.

104.   Defendant Reed, while acting "under color" of state law, intentionally discriminated against and harassed Finley on the basis of race in violation of Finley's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

105.   The Fourteenth Amendment's Equal Protection Clause prohibits discrimination against public employees on the basis of race. It also prohibits creating a racially hostile work environment.

106.   Defendant Reed harassed Finley because of his race, Black.

107.   Defendant Reed harassed Finley because he disciplined Black police officers and promoted a White police officer rather than a Black police officer.

108.   Defendant Reed became hostile and adversarial to Finley because Finley would not engage in and opposed Reed's preference for race-based decision-making.

109.   Defendant Reed harassed Finley because he objected to the race-based practices advocated and condoned by Defendant Reed and the City of Montgomery.

110.   Because Finlay would not agree to violate federal law, Defendant Reed

encouraged Black police officers to file complaints against Finley so as to embarrass him publicly and force him to resign as Chief of Police. Because of those false complaints, Finley became fearful for his physical well-being.

111. On or about April 6, 2021, Defendant Reed knowingly caused various police officers to file false complaints against Finley with the Montgomery City Council and, subsequently, the Alabama Ethics Commission.

112. Defendant Reed's actions were motivated by pressure from Black pastors within the City of Montgomery, including Pastor Ed Nettles, because Finley did not manage the police department in a way that favored Black officers and the Black community.

113. Defendant Reed, either personally or by directing others, intentionally committed acts that created a hostile work environment for Finley because of his race and his opposition to race-based policies advocated by Defendant Reed.

114. Finley did not welcome the offensive acts, conduct, and statements, nor did Finley directly or indirectly invite or solicit them by his own acts, conduct or statements.

115. The offensive acts, conduct, and statements were so severe or pervasive that they materially altered the terms and conditions of Finley's employment.

116. Mayor Reed had supervisory authority over Finley in the terms and conditions of his employment.

20

117.   Mayor Reed's actions were "under color" of state law.

118.   Finley suffered damages because of the hostile work environment.

119.   As a proximate result of Defendant Reed's unlawful harassment and discrimination, Finley suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a) That he be restored to the position of Chief of Police or, in the alternative, awarded front pay;
b) Back pay and benefits from the date of his removal as Chief of Police to the date of final judgment;
c) Punitive damages against Defendant Reed in his individual capacity to deter such conduct in the future;
d) Injunctive relief;
e) Interest on back pay and benefits;
f) Attorneys' fees;
g) Costs; and
h) Such other legal or equitable relief to which Plaintiff may be entitled.

**COUNT III**
**42 U.S.C. § 1983**
**VIOLATION OF CIVIL RIGHTS BY**
**DEPRIVATION OF RIGHTS PROVIDED BY**
**THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH**
**AMENDMENTS TO THE UNITED STATES CONSTITUTION**
**AGAINST ALL DEFENDANTS**

120.   Plaintiff incorporates by reference paragraphs 1-90 of this Complaint as if fully set out herein.

121.   On or about April 6, 2021, Defendant City of Montgomery, its agents, employees, and Defendant Reed caused false complaints to be made against Finley before the Montgomery City Council.

122.   Reed told Finley that neither he nor anyone representing him could speak in his defense.

123.   The City of Montgomery, its agents, employees, and Reed then forwarded the knowingly false complaints against Finley to the Alabama Ethics Commission and Byron Butler.

124.   Byron Butler, a Black male, previously worked for the Montgomery Police Department, is a pastor, and is a personal friend of several police officers who Finley sought to discipline in 2020 and 2021.

125.   The City of Montgomery and Reed conspired with Butler to bring and investigate false and manufactured ethical complaints against Finley so as to terminate him for false complaints and ethical violations.

126.    In June 2021, three weeks after Butler notified Finley in writing of the ethical complaints against him, Reed, acting on behalf of the City of Montgomery and individually, forced Finley to resign his employment with the City or be terminated.

127.    On August 4, 2021, based on false and fabricated evidence created by the City of Montgomery and Reed, the Alabama Ethics Commission found that Finley had committed a "minor violation" of the Alabama Ethics Act.

128.    Finley was denied his constitutional right of due process during the process which resulting in the findings of the Alabama Ethics Commission.

129.    Lack of due process is unconstitutional and in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Finley has suffered the damages as hereinabove alleged.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Honorable Court enter a judgment against all Defendants pursuant to 42 U.S.C. § 1983 for:

a.  Compensatory damages to be determined by the trier of fact;
b.  Injunctive relief, including, but not limited to, reinstating Chief Finley;
c.  Declaratory relief;
d.  That relief which is fair, just, and equitable; and
e.  Costs, including reasonable attorney's fees.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS UNDER**
**THE FOURTEENTH AMENDMENT AND FIFTH AMENDMENT**
**AGAINST ALL DEFENDANTS**

130.    Plaintiff incorporates by reference paragraphs 1-90 of this Complaint as if fully set forth herein.

131.    Finley had property rights in his positions with the Montgomery Police Department and the accompanying benefits of said position.

132.    The Fifth Amendment to the United States Constitution guarantees Plaintiffs the right not to be deprived of property without due process of law.

133.    The Fourteenth Amendment to the United States Constitution extends the rights found in the Fifth Amendment to apply to the states and their actors.

134.    Pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, Finley had the right not to have his property taken without due process.

135.    Defendants brought false complaints and charges against Finley and conducted an investigation of Finley in a manner which deprived him of due process and deprived him of his property interests in his job with the Montgomery Police Department.   Defendants pursued this course of conduct malice towards Finley and with a motive to deprive Finley of his employment with the City of Montgomery Police Department.

136.    Defendants conduct deprived Finley of his property in violation of his property rights as secured by the Fifth and Fourteenth Amendments.

137.   Finley's property has not been restored. Said property includes Finley's position as Chief of Police of the Montgomery Police Department with accompanying benefits.

138.   Any post-deprivation remedies available to Finley to address Defendants' taking of his property is inadequate.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Honorable Court enter a judgment against all Defendants pursuant to 42 U.S.C. § 1983 for:

a.   Compensatory damages to be determined by the trier of fact;
b.   Injunctive relief, including, but not limited to, reinstating Chief Finley;
c.   Declaratory relief;
d.   That relief which is fair, just, and equitable; and
e.   Costs, including reasonable attorney's fees.

## COUNT V
## FOURTEENTH AMENDMENT - EQUAL PROTECTION CLAUSE
## RACE DISCRIMINATION
## HOSTILE WORK ENVIRONMENT - CO-WORKER HARASSMENT
## AGAINST DEFENDANT REED

139.   Plaintiff adopts and realleges paragraphs 1-90 as if fully recited herein.

140.   Mayor Reed while acting "under color" of state law, intentionally discriminated against and harassed Finley because of his race, in violation of Finley's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

141. The Fourteenth Amendment's Equal Protection Clause prohibits discrimination against public employees on the basis of race. It also prohibits creating a hostile work environment based on an employee's race.

142. Defendant Reed harassed Finley because of his race, Black.

143. Defendant Reed harassed Finley because he refused to grant preferential treatment to Black police officers and promoted a White police officer rather than a Black police officer.

144. Defendant Reed became hostile and adversarial to Finley because Finley would not follow the Defendant's race-based employment preferences.

145. Defendant Reed harassed Finley because he objected to the race-based practices advocated and condoned by Defendants Reed and the City.

146. Because Finley would not agree to violate federal law, Defendant Reed encouraged Black police officers to file complaints against Finley so as to force him to resign as Chief of Police based on improper conduct and ethical violations. Finley became fearful for his physical well-being and his reputation as Chief of Police.

147. On or about April, 6 2021, Mayor Reed caused false complaints to be made against Finley before the Montgomery City Council and subsequently the Alabama Ethics Commission.

148. The harassment created a racially and derogatory hostile work environment for Finley.

149.    Finley did not welcome the offensive acts, conduct, and statements, nor did he indirectly invite or solicit them by his own acts or statements.

150.    The harassment was so severe or pervasive that it materially altered the terms and conditions of Finley's employment.

151.    Defendant Reed knew about and encourage the actions that caused the racially and derogatory hostile work environment.

152.    Defendant Reed acted intentionally, willfully, and with and deliberate indifference in not taking prompt remedial action to eliminate the hostile work environment.

153.    Defendant Reed's actions were "under color" of state law.

154.    Finley suffered damages because of the hostile work environment.

155.    As a proximate result of Defendant Reed's unlawful harassment, Finley suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a)    That he be placed in the position in which he would have worked absent Defendant's discriminatory and retaliatory treatment, or, in the alternative, front pay;

b)    Back pay from the date of his retaliatory removal and for the raises he should have received;

c)    Punitive damages, to deter such conduct in the future;

d)    Injunctive relief;

e)    Interest;

f)    Attorneys' fees;
g)    Costs; and
h)    Such other legal or equitable relief to which Plaintiff may be entitled.

## COUNT VI
## 42 U.S.C. § 1983 - RACE DISCRIMINATION
## CONSTRUCTIVE TERMINATION AND FORCED RETIREMENT
## AGAINST DEFENDANT CITY OF MONTGOMERY

156.    Plaintiff adopts and realleges paragraphs 1-90 as if fully recited herein.

157.    Finley is African-American and member of a protected class.

158.    Defendant City of Montgomery violated Finley's Federal Civil Rights that prohibit employers from discriminating against an employee in the terms and conditions of their employment because of the employee's race. 42 U.S.C. § 1981. Those rights are enforced against the Defendant through an action under 42 U.S.C. § 1983.

159.    Defendant City of Montgomery, through its agent Defendant Reed, engaged in acts of race discrimination, namely that Finley was subjected to adverse terms and conditions, including constructive termination and forced retirement because of his race.

160.    Defendant City of Montgomery, through its agent Defendant Reed, forced Finley to resign because he refused to grant preferential treatment to Black police officers and promoted a White police officer rather than a Black police officer.

28

161. Defendant City, through its agent Defendant Reed, forced Finley to resign because of his race, Black, and in retaliation for his objection to intentional race discrimination advocated by Defendant Reed on behalf of Defendant City.

162. Defendant City, through its agent Defendant Reed, forced Finely to resign in retaliation for complying with the Civil Rights laws of the United States and hiring, promoting, and disciplining employees equitably, regardless of race or gender.

163. Defendant City, through its agent Defendant Reed, constructively terminated Finley, forced him to retire, and removed his pay because of his race.

164. Finley's race was a motivating factor that prompted Defendant City of Montgomery to remove Finley as Chief of Police and force him to retire. *Quigg v. Thomas County School Dist.*, 814 F.3d 1227, 1237-38 (11th Cir. 2016).

165. As a proximate result of Defendant's unlawful discrimination and retaliation, Plaintiff suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a) That he be placed in the position in which he would have worked absent Defendant's discriminatory and retaliatory treatment, or, in the alternative, front pay;

b) Back pay from the date of his retaliatory removal and for the

raises he should have received;

c) Punitive damages, to deter such conduct in the future;
d) Injunctive relief;
e) Interest;
f) Attorneys' fees;
g) Costs; and
h) Such other legal or equitable relief to which Plaintiff may be entitled.

**COUNT VII**
**TITLE VII – RACE DISCRIMINATION**
**CONSTRUCTIVE DISCHARGE AND FORCED RETIREMENT**
**AGAINST DEFENDANT CITY OF MONTGOMERY**

166. Plaintiff adopts and realleges paragraphs 1-90 as if fully recited herein.

167. Finley is African-American and member of a protected class.

168. In this Count, Finley alleges that Defendant City of Montgomery, acting through its agents and employees, discriminated against him because of his race with regard to the terms and conditions of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e, *et seq*.

169. This action seeks to redress grievances resulting from acts of the City of Montgomery, its agents, servants, and employees committed with respect to Finley's employment and for a permanent injunction restraining the City from maintaining a policy or practice of discriminating and/or retaliating against Finley and other persons similarly situated on account of race.

170. The City of Montgomery forced Finley to resign because he refused to grant preferential treatment to Black police officers and promoted a White police

officer rather than a Black police officer.

171.   Defendant City, through its agent Defendant Reed, forced Finley to resign because of his race, Black, and in retaliation for his objection to intentional race discrimination advocated by Defendants Reed and the City.

172.   Defendant City forced Finley to resign in retaliation for complying with the Civil Rights laws and hiring, promoting, and disciplining employees equitably, regardless of race or gender.

173.   Finley's race was a motivating factor in Defendant's decision to subject Finley to adverse employment actions including differing terms of employment to that of his coworkers. *See* 42 U.S.C. § 2000e-2(m); *Quigg v. Thomas County Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).

174.   Defendant's conduct proximately caused Finley to suffer extreme emotional distress, embarrassment, humiliation, financial loss, loss of employment opportunity, and other pecuniary and non-pecuniary losses.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

    a)    That he be placed in the position in which he would have worked absent Defendant's discriminatory and retaliatory treatment, or, in the alternative, front pay;

    b)    Back pay from the date of his retaliatory removal and for the raises he should have received;

    c)    Injunctive relief;

    d)    Interest;

    e)    Attorneys' fees;

f)    Costs; and

g)    Such other legal or equitable relief to which Plaintiff may be
      entitled.

## COUNT VIII
## TITLE VII – HOSTILE WORK ENVIRONMENT
## WORKPLACE HARASSMENT BY SUPERVISOR
## AGAINST DEFENDANT CITY OF MONTGOMERY

175.   Plaintiff adopts and realleges paragraphs 1-90 as if fully recited herein.

176.   Defendant City of Montgomery violated Finley's Federal Civil Rights
that prohibit employers from discriminating against employees in the terms or
conditions of employment because of their race.

177.   The City of Montgomery, though its agents and employees, harassed
Finley because he is a Black male.

178.   The City harassed Finley because he disciplined Black police officers
and promoted a White police officer.

179.   Mayor Reed became hostile and adversarial to Finley in retaliation
because Finley would not engage in the Mayor's race-based decision-making.

180.   The City harassed Finley because of his objection to intentional race
discrimination proposed and condoned by Mayor Reed and the City. The City
subjected Finley to adverse terms and treatment.

181.   Mayor Reed targeted Finley for harassment and caused Finley to work
in a hostile environment, portraying him intentionally as a racist for disciplining

Black police officers and promoting a White female officer, knowing that such labels would subject him to personal and professional harm.

182.   Finley was caused to be threatened and targeted. Mayor Reed encouraged Black police officers to file complaints against Finley to target him further for termination or to force him to quit. Finley became fearful for her physical well-being.

183.   On or about April 6 2021, Mayor Reed caused false complaints to be made against Finley before the Montgomery City Council and subsequently the Alabama Ethics Commission.

184.   The harassment created a hostile work environment.

185.   Finley did not welcome the offensive acts, conduct and/or statements, nor did he directly or indirectly invite or solicit them by his own acts, conduct and/or statements.

186.   The harassment was so severe or pervasive that it materially altered the terms and conditions of Finley's employment.

187.   The City knew, or in the exercise of reasonable care should have known about, the harassment, but did not take prompt remedial action to eliminate the hostile work environment.

188.   Finley suffered damages because of the hostile work environment.

189.   As a proximate result of Defendant's unlawful harassment, Finley

suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a) That he be placed in the position in which he would have worked absent Defendant's discriminatory and retaliatory treatment, or, in the alternative, front pay;

b) Back pay from the date of his retaliatory removal and for the raises he should have received;

c) Injunctive relief;

d) Interest;

e) Attorneys' fees;

f) Costs; and

g) Such other legal or equitable relief to which Plaintiff may be entitled.

## COUNT IX
### 42 U.S.C. § 1983 AND TITLE VII
### RETALIATION
### AGAINST DEFENDANT CITY OF MONTGOMERY

190.    Plaintiff adopts and realleges paragraphs 1-90 as if fully recited herein.

191.    This action seeks to redress grievances resulting from acts of Defendant, its agents, servants, and employees committed with respect to Finley's employment and for a permanent injunction restraining Defendant from maintaining a policy or practice of discriminating and/or retaliating against Finley and other persons similarly situated on account of race.

192.    Defendant City of Montgomery retaliated against Finley because he

took steps to enforce his lawful rights under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 2000e, *et seq.*

193.   Finley is African-American and member of a protected class.

194.   The City of Montgomery forced Finley to resign because he disciplined Black police officers and promoted a White police officer.

195.   The City forced Finley to resign because of his race, Black, and in retaliation for his objection to intentional race discrimination by the Mayor and the City.

196.   The City forced Finely to resign in retaliation for enforcing Civil Rights laws of the United States and hiring, promoting, and disciplining employees equitably, regardless of race or gender.

197.   The City failed to remedy the discriminatory conduct of its agents and employees.

198.   The City condoned and ratified the conduct of its agents and employees by forcing Finley to resign or be terminated for opposing discrimination and harassment.

199.   After Finley engaged in protected conduct, the City of Montgomery caused false complaints to be brought against Finley before the Montgomery City Council and subsequently the Alabama Ethics Commission.

200.    In November 2021, the Alabama Attorney General's office exonerated and cleared Finley of all wrongdoing.

201.    The Attorney General's separate investigation of Finley concluded that the Ethics Commission conspired with the City and its agents in unethical and illegal acts to present false evidence to the Ethics Commission regarding Finley. Further investigation revealed exculpatory evidence was withheld in violation of the law, and other evidence was continued and incorrectly reported to the Commission in order for Raulston and Butler to secure votes of the Commission to convict Finley of ethical violations.

202.    The City did not issue any type of press or media release that Finley was cleared of a violation of the Alabama Ethics Act; nor did the Ethics Commission acknowledge the findings of the Attorney General's office.

203.    The City and the Mayor's office have remained silent and did not attempt to rectify the professional and reputational harm it caused to Finley. The City did not reinstate Finley to his former position or restore his pay. Rather, in March 2022, the City and the Mayor installed Darryl Albert as the new Chief of Police as a permanent replacement for Finley, displacing the Interim Police Chief, Ramona Harris.

204.   After Finley's constructive termination and forced resignation, the City failed to acknowledge his retirement and years of dedicated service to the City of Montgomery.

205.   In contrast, on February 21, 2023, the Montgomery Police Department publicly recognized Major Ramona Harris' retirement celebration and acknowledgement publicly, on social media and within the Police Department and the City, including photos of Harris posing with the Mayor and Police Chief Albert commemorating the milestone, and a large cake decorated, "Congratulations on your Retirement, 20 Years, Maj. Ramona Harris." One social media post read: "The Montgomery Police Department would like to thank Major R. J. Harris for 20 years of dedicated service to the citizens of Montgomery. Join us as we wish her well in future endeavors. Happy Retirement, Major!! #MPD"

206.   The City and the Police Department intentionally refused to acknowledge Finley or his years of service.

207.   The City constructively terminated Finley, forced him to retire, and removed his pay because of his race, and in retaliation for his complaints of and opposition to race discrimination and harassment.

208.   The City subjected Finley to adverse employment actions such as forced resignation and loss of pay, in retaliation for Finley engaging in protected conduct.

209. Finley's race was a motivating factor that prompted the City of Montgomery to force his resignation and subject him to adverse employment actions including differing terms of employment in violation of Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983. *See* 42 U.S.C. § 2000e-2(m); *Quigg v. Thomas County School Dist.*, 814 F.3d 1227, 1237-38 (11th Cir. 2016).

210. As a proximate result of Defendant's unlawful retaliation, Plaintiff suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a)    That he be placed in the position in which he would have worked absent Defendant's retaliatory treatment, or, in the alternative, front pay;

b)    Back pay from the date of his retaliatory removal and for the raises he should have received;

c)    Injunctive relief;

d)    Interest;

e)    Attorneys' fees;

f)    Costs; and

g)    Such other legal or equitable relief to which Plaintiff may be entitled.

# COUNT X
## CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS
### (42 U.S.C. § 1985)
### AGAINST ALL DEFENDANTS

211. Plaintiff adopts and realleges paragraphs 1-90 as if fully recited herein.

212.   Plaintiff alleges that Defendants conspired to violate his civil rights in violation of 42 U.S.C. § 1985. In taking the above-described actions, Defendants intentionally and willfully conspired against Plaintiff to deprive him of his constitutionally-protected rights to oppose race discrimination and speech under the First Amendment, to include stripping him of his position as Chief of Police.

213.   Plaintiff's constitutionally-protected speech opposing race discrimination regarded matters of public concern, specifically, abuses in the Police and Mayor's Departments, as set out in articles participated in or generated by Plaintiff and numerous statements or presentations before the City, its officers, and community reports.

214.   Said opposition and speech played a substantial part in Defendants' decision to discharge Plaintiff as Chief of Police.

215.   As a proximate consequence of Defendants' violation of the First Amendment, Plaintiff has suffered and will continue to suffer damage to his professional life, reputation, and future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

216.   The City and Reed committed acts to further the conspiracy.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a)   That he be placed in the position in which he would have worked absent Defendants' retaliatory treatment, or, in the alternative, front pay;

b)   Back pay from the date of his retaliatory removal and for the raises he should have received;

c)   Punitive damages, to deter such conduct in the future;

d)   Injunctive relief;

e)   Interest;

f)   Attorneys' fees;

g)   Costs; and

h)   Such other legal or equitable relief to which Plaintiff may be entitled.

## COUNT XI
## 42 U.S.C. § 1985
## CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS AGAINST ALL DEFENDANTS

217.   Plaintiff incorporates by reference paragraphs 1-90 of this Complaint as if fully set out herein.

218.   Finley alleges that Defendants conspired to violate their civil rights in violation of 42 U.S.C. § 1985. In taking the above-described actions, Defendants Reed and the City of Montgomery intentionally and willfully conspired to deprive Plaintiff of his constitutionally-protected rights to due process and equal treatment under the Fourteenth Amendment.

219.   Defendant's conduct was driven by a race-based invidious discriminatory animus against Plaintiffs.  Defendants believed that Reaves should not have been selected as Deputy because of her race.  Defendants also believed that

Finley, as a Black male, should not have investigated, nor permitted Reaves to investigate, the Black officers for fraud and theft.

220.    As a proximate consequence of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered and will continue to suffer damage to their professional lives and reputations as well as damage to their future career opportunities, future pecuniary losses, emotional pain, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

221.    Defendants each committed acts to further the conspiracy, as detailed in paragraphs 1 – 90 above.

222.    As a proximate result of Defendants' unlawful conduct, Plaintiffs suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Honorable Court enter a judgment against all Defendants pursuant to 42 U.S.C. § 1985 for:

a. Compensatory damages to be determined by the trier of fact;
b. Injunctive relief, including, but not limited to, reinstating Chief Finley;
c. Declaratory relief;
d. That relief which is fair, just, and equitable; and
e. Costs, including reasonable attorney's fees.

## COUNT XII
## CIVIL CONSPIRACY UNDER ALABAMA LAW
## AGAINST ALL DEFENDANTS

223.   Plaintiff adopts and realleges paragraphs 1-90 as if fully recited herein.

224.   A civil conspiracy under Alabama law requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.

225.   Plaintiff's claim of civil conspiracy is brought against the Defendants named in their individual capacities.

226.   Finley was Chief of Police of the Montgomery Police Department. He held a property interest in that position. Defendants conspired to illegally deprive him of that property interest by engaging in the violation of his rights under the First Amendment to the U.S. Constitution.

227.   Defendants conspired to illegally retaliate against Finley for engaging in federally-protected speech and exercising his federally-protected right to speak out on matters of public concern.

228.   Defendants conspired to deprive Finley of his civil rights.

229.   Defendants conspired to damage Finley's reputation and name by removing him from his visible and prestigious position as Chief of Police, which diminished his standing and reputation in the community, and by limiting his income to inadequate or nonexistent amounts.

230. Defendants conspired among themselves and each Defendant committed acts to further the conspiracy.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a) That he be placed in the position in which he would have worked absent Defendants' retaliatory treatment, or, in the alternative, front pay;

b) Back pay from the date of his retaliatory removal and for the raises he should have received;

c) Punitive damages, to deter such conduct in the future;

d) Injunctive relief;

e) Interest;

f) Attorneys' fees;

g) Costs; and

h) Such other legal or equitable relief to which Plaintiff may be entitled.

## COUNT XIII
## DEFAMATION, LIBEL, AND SLANDER
## AGAINST ALL DEFENDANTS

231. Plaintiff incorporates by reference paragraphs 1-90 of this Complaint as if fully set out herein.

232. This is a claim against all Defendants arising under the laws of the State of Alabama prohibiting defamation, libel, and slander.

233. Reed and the City of Montgomery directed, encouraged, and/or influenced the false complaints, charges, and investigation of Plaintiff.

234. Defendants falsely accused Plaintiff of unlawful conduct and falsified

documents, misled witnesses with false documents, and knowingly and maliciously fabricated facts and testimony to damage Plaintiff. Defendants falsely, maliciously, and intentionally made defamatory and slanderous statements about Plaintiff before, during and after their fraudulent investigation.

235.   In the alternative, Defendants were negligent and wanton in bringing false and fabricated charges against Plaintiff and by making defamatory and slanderous statements about Plaintiff before, during, and after their fraudulent complaints of ethical violations they sanctioned and condoned.

236.   These false and defamatory statements published by Defendants were *slander per se* and *slander per quod*. Defendants knew that their statements, that Plaintiff had committed ethics violations, were false, defamatory, and malicious when made.

237.   Defendants' statements about Plaintiff were made to ridicule, shame, and disgrace Plaintiff. Specifically, Plaintiff was disgraced within the City of Montgomery, the Montgomery Police Department, and in the community.

238.   Defendants' statements about Plaintiff, the fabricated investigation, the falsified documents and testimony, and the deliberately misleading representations to witnesses and commissioners directly caused injury to Plaintiff and his family.

239.   Defendants' conduct against Plaintiff was pursued with malice and a motive to intentionally harm Plaintiff and his family physically, financially,

reputationally, and emotionally.

240.    Defendants' conduct proximately caused Plaintiff and his family to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which he claims damages.

WHEREFORE, Plaintiff seeks declaratory and injunctive relief, an award of compensatory and punitive damages, damages for mental anguish, costs, interest, attorneys' fees, and any and all other such relief the trier of fact may assess.

## COUNT XIV
## OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

241.    Plaintiff incorporates by reference paragraphs 1-90 of this Complaint as if fully set out herein.

242.    This is a claim against all Defendants arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

243.    Defendants knew or should have known that bringing false charges, fabricating evidence, and conducting a fraudulent investigation against Plaintiff would inflict emotional distress upon Plaintiff.

244.    Defendants' adverse treatment of Plaintiff, in particular subjecting him to severe, degrading, and humiliating harassment and ridicule, was outrageous, extreme, beyond the bounds of decency, and shocks the conscience.

245.    Defendants' repeated discriminatory treatment of Plaintiff damaged his reputation and harmed his ability to seek other employment.

246.    Defendants' conduct was malicious, intentional, willful, and employed to inflict severe emotional distress, embarrassment, physical trauma, and ridicule upon Plaintiff.

247.    Defendants' conduct was extreme and outrageous and has caused Plaintiff severe distress. Because of Defendants' conduct, Plaintiff has suffered monetary damages, embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which he claims damages.

248.    Defendants' conduct constitutes the tort of outrage.

WHEREFORE, Plaintiff seeks declaratory and injunctive relief, an award of compensatory and punitive damages, damages for mental anguish, costs, interest, attorneys' fees, and any and all other such relief the trier of fact may assess.

## COUNT XV
## INVASION OF PRIVACY
## AGAINST ALL DEFENDANTS

249.    Plaintiff incorporates by reference paragraphs 1-90 of this Complaint as if fully set out herein.

250.    This is a claim against all Defendants for invasion of Plaintiff's right to privacy based on the laws of the State of Alabama.

251.   Defendants took actions seeking to invade the privacy of Plaintiff by conspiring to bring false charges and fabricated evidence against him and giving publicity to private information about Plaintiff that violated ordinary decency and putting Plaintiff in a false, but not necessarily defamatory, position in the public eye and intruding into Plaintiff's physical solitude and seclusion.

252.   Defendants' intrusion into the private activities of Plaintiff during the investigation and presenting false evidence to the Ethics Commission based on false evidence and fabricated complaints caused him shame, embarrassment, humiliation, and worry because it created the perception and inference that Plaintiff had engaged in ethical and moral wrongdoing or engaged in illegal acts.

253.   Defendants' intrusion into the private affairs and concerns of Plaintiff based on false evidence and fabricated complaints was offensive and objectionable to Plaintiff.

254.   Defendants invaded Plaintiff's personal and emotional sanctum by harassing and retaliating against him.

255.   Defendants intruded into Plaintiff's physical solitude and seclusion by requiring his to defend his employment history during Defendants' investigation based on false charges and fabricated evidence.

256.   Defendants placed Plaintiff in a false light with their peers, employees, business contacts, and in the public they had long served as sworn law officers of the State of Alabama.

257.   Defendants informed Plaintiff's peers, employees, and business contacts that he had been found guilty of ethics violations. Defendants publicized this information and allowed others they conspired with to appropriate private and false information and disseminate it in the public eye, including through media releases.

258.   Defendants' false portrayal of Plaintiff and the circumstances surrounding their investigation damaged Plaintiff's relationships and his ability to seek comparable employment in their career of choice.

259.   Defendants' conduct proximately caused Plaintiff to suffer embarrassment, humiliation, shame, physical injury, pain and suffering, loss of reputation, loss of career opportunity, emotional distress, loss of pay and benefits, and mental anguish for which he claims damages as set out below.

WHEREFORE, Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, damages for mental anguish, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

*/s/ Alicia K. Haynes*
Alicia K. Haynes (ASB-8327-E23A)
An Attorney for Plaintiff

OF COUNSEL:
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226
Phone: (205) 879-0377
Facsimile: (205) 879-3572
Email: akhaynes@haynes-haynes.com

Heather Newsom Leonard (ASB-1152-061H)
**HEATHER LEONARD, P.C.**
P.O. Box 43768
Birmingham, AL 35243
Phone: (205) 977-5421
Facsimile: (205) 278-1400
Email: heather@heatherleonardpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of October, 2023, a true copy of the above and foregoing has been electronically filed with the CM/ECF system which serves notice on the following counsel of record:

Terry G. Davis
Ronald B. Hatcher
4183 Carmichael Road, Ste. B
Montgomery, AL 36106
(334) 270-0592
tdavis@dhlaw1.com
rhatcherlaw@gmail.com

Scott M. Speagle
Orin C. Odom, III
WEBSTER, HENRY, BRADWELL, COHAN
  SPEAGLE & DESHAZO, P.C.
Post Office Box 239
Montgomery, AL 36101
(334) 264-9472
scott@websterhenry.com
oodom@websterhenry.com

/s/ Alicia K. Haynes
OF COUNSEL